**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| Stanley A. Schell, | ) |
| | ) |
|                   Plaintiff, | ) |
| | ) |
| v. | ) No.  1:13-cv-0001- LMB |
| | ) |
| County of Sainte Genevieve, Missouri, and | ) |
| | ) |
| Gary J. Stolzer, in his official capacity as | ) |
|      Sheriff of County of Sainte Genevieve, | ) |
|      Missouri, | ) |
| | ) |
|                   Defendants. | ) |
| | ) |

**FIRST AMENDED COMPLAINT**

*INTRODUCTION*

      1.      This is civil rights action filed by Stanley A. Schell, a detainee held at the Sainte Genevieve County Sheriff's Office Detention Center.  He brings suit pursuant to 42 U.S.C. § 1983, alleging—on his own behalf—a violation of his First Amendment rights and alleging—on his own behalf and on behalf of a class of current and future inmates at the Sainte Genevieve County Sheriff's Office Detention Center —a Due Process violation.

*JURISDICTION AND VENUE*

      2.      This Court has jurisdiction pursuant to 42 U.S.C. § 1983 over Plaintiff's claims of the deprivation under color of state law of rights, privileges, or immunities secured by the Constitution.

      3.      In addition, this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's civil action arising under the Constitution of the United States.

4. In addition, this Court has jurisdiction pursuant to 28 U.S.C. § 1343 to redress the deprivation, under color of state law, of any right, privilege, or immunity secured by the Constitution of the United States.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)) because Defendant Sainte Genevieve County, an entity capable of being sued, is located in Sainte Genevieve County and a substantial part of the events and omissions giving rise to the claims occurred in Sainte Genevieve County.

6. Divisional venue is proper in the Southeastern Division.  E.D.MO. L.R. 2.07(A)(3) and E.D.MO. L.R. 2.07(B)(2).

### *PARTIES*

7. Plaintiff, Stanley A. Schell, is incarcerated at the Sainte Genevieve County Sheriff's Office Detention Center.

8. Defendant County of Sainte Genevieve, Missouri, is a political subdivision of the State of Missouri and is the government entity responsible for operation of the Sainte Genevieve County Sheriff's Office Detention Center.

9. Defendant Gary J. Stolzer is the Sheriff of County of Sainte Genevieve, Missouri; the policy maker for the Sainte Genevieve County Sheriff's Office Detention Center; and, for jail operations, the policy maker for the County of Sainte Genevieve.  He is sued in his official capacity only.

10. All actions by Stolzer and employees or agents Sainte Genevieve County described herein are taken under color of state law.

*FACTS*

11. For several months, Plaintiff has maintained, at his own expense, a print subscription to the *Ste. Genevieve Herald*, which is published and delivered weekly.

12. Until and through October 2012, Plaintiff received his copy of the *Ste. Genevieve Herald* every Wednesday without exception.

13. According to the detainee handbook, the only limitation on the receipt of newspapers is that they will be accepted only if sent directly from the publisher.

14. In late October, 2012, Plaintiff submitted a letter to the editor of the *Ste. Genevieve Herald*.

15. Plaintiff's letter to the editor constituted a protected exercise of his First Amendment rights.

16. On October 31, 2012, Plaintiff's letter was published on page two of the *Ste. Genevieve Herald*.

17. Plaintiff's letter appeared in the *Ste. Genevieve Herald* as follows:

> **Dear Editor:**
>
> Every Wednesday at "mail call," I look forward to receiving my copy of the *Ste. Genevieve Herald*. Although I am not from this area, I enjoy the "hometown" news, the political disputes, "where are the donations for the siren pole?" and even photos of Sheriff Gary Stolzer's latest toy, the SafeBoat.
>
> Then, I turn to the second section to review the vast listings in the Church Services Directory. Ste. Genevieve has

>several Baptist churches, plus Lutheran, Presbyterians, non-denominational Christian churches, plus the Church of Ste. Genevieve Catholic, with a long history in the community.
>
>I read about the 20 other churches in the general area, and I ask myself, "Where are you?"
>
>Here sits 140-plus sinners in need of spiritual guidance. Where are you?  More than 30 pastors and zero regularly visiting the Ste. Genevieve County Detention Center?  Did the local ministers miss where Jesus said, "I was in prison and you visited me"?
>
>How hard can it be to walk through the jail once a week offering encouragement and prayers?
>
>Pastors, priests, deacons, elders, sisters and brothers— where are you?
>
>**Stan Schell,**
>
>**Ste. Genevieve County Detention Center**

18. Plaintiff received his newspaper on October 31, 2012.

19. Plaintiff asked jail personnel to make photocopies the *Ste. Genevieve Herald* page containing his published letter.

20. On November 7, 2012, Plaintiff did not receive his newspaper.

21. Although the paper was delivered to the Sainte Genevieve County Sheriff's Office Detention Center, it was not delivered to Plaintiff.

22. Plaintiff did not receive notice that his newspaper was being censored.

23. On or about November 8, 2012, Plaintiff submitted an "Inmate Request," which stated: "I <u>always</u> receive my Ste. Genevieve Herald newspapers on Wednesday; yet tonight, no paper.  Is there a problem here?"

24. On or about November 13, 2012, Plaintiff received a response to his "Inmate Request."  A Sergeant wrote: "I spoke to 8502 reference this issue.  The Sheriff has determined no local papers are allowed due to the fact that they publish local arrestees & their charges.  This poses a security risk to inmates & our facility & are therefore no longer allowed."

25. No notice of censorship, opportunity to contest censorship decision, or opportunity to redact has been provided to the *Ste. Genevieve Herald*.

26. Plaintiff's copies of the *Ste. Genevieve Herald* have not been returned to the sender.

27. On or about November 14, 2012, Plaintiff filed a grievance about the censorship decision and process.

28. On or about November 20, 2012, Plaintiff received an undated and unsigned "Administrative Response" to his grievance, which rejected his complaints.

29. On November 22, 2012, Plaintiff filed an appeal to the Sheriff, in accordance with the grievance policy.

30. According to the detainee handbook, the Sheriff must respond to an appeal within fifteen working days.

31. When the Sheriff did not respond within fifteen working days, Plaintiff filed a grievance about the failure to respond to his appeal.

32. On December 20, 2012, Plaintiff received a response to his appeal from the Sheriff, back-dated to December 14, 2012, which denied Plaintiff's appeal.

5

33. According to the detainee handbook, the Sheriff's response "is final and will conclude the [grievance] procedure."

34. Plaintiff has exhausted his administrative remedies with respect to all claims and all defendants.

35. It is the policy, custom, and practice of Defendants not to provide individualized notice of the decision to censor or seize written material to the sender of the written material or to the intended recipient.

36. It is the policy, custom, and practice of Defendants not to provide to senders or intended recipients an opportunity to contest a decision by Defendants to censor or seize written materials.

## COUNT I
### First Amendment Claim
### Individual Claim for Nominal Damages & Prospective Relief

37. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if set forth verbatim.

38. Plaintiff has a First Amendment right to receive and read the print copies of the *Ste. Genevieve Herald* for which he has a prepaid subscription.

39. The policy, custom, and practice of refusing to provide Plaintiff with his copy of the *Ste. Genevieve Herald*, or otherwise allow him to read it, beginning on or about November 7, 2012, and continuing thereafter is not rationally related to a legitimate penological interest.

40. There are no alternative means available for Plaintiff to exercise his right to receive and read his copies of the *Ste. Genevieve Herald* if jail officials will not give the paper to him.

6

41.     Permitting Plaintiff to receive and read his copies of the *Ste. Genevieve Herald*, as permitted prior to November 7, 2012, would have no negative impact on the staff or other inmates of the detention center.

42.     There are alternatives for furthering any government interest advanced by the censorship of the *Ste. Genevieve Herald*, including redacting those portions of the *Ste. Genevieve Herald* about which there are concerns and giving the sender notice and the opportunity to redact.

43.     In addition, or in the alternative, upon information and belief, the policy, custom, and practice of refusing to provide Plaintiff with his copy of the *Ste. Genevieve Herald*, beginning on or about November 7, 2012, and continuing thereafter is in retaliation for Plaintiff's exercise of his First Amendment rights.

44.     Upon information and belief, but-for Plaintiff's exercise of his First Amendment rights by submitting a letter to the editor for publication, Plaintiff would not have been prohibited from receiving or reading his copies of the *Ste. Genevieve Herald*, beginning on or about November 7, 2012.

WHEREFORE, as to Count I, Plaintiff prays this Court:

    A.     Upon proper motion, issue a temporary restraining order, preliminary injunction, or both, requiring Defendants to allow Plaintiff to receive or read his weekly copies of the *Ste. Genevieve Herald*, or, in the alternate, requiring Defendants to redact any objectionable information from the *Ste. Genevieve Herald* rather than censor the entire newspaper, or, in the alternate, requiring Defendants to give notice and the opportunity to redact to the publisher of the *Ste. Genevieve Herald*;

B.      Enter declaratory judgment pursuant to 42 U.S.C. § 1983 that the policy, practice, and custom of censoring the *Ste. Genevieve Herald* is unconstitutional in this case;

C.      Enter an appropriate permanent injunction to protect Plaintiff's First Amendment rights;

D.      Award Plaintiff nominal damages for the past violation of his First Amendment rights, retaliation, or both;

E.      Award Plaintiff costs, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988 or any other applicable law; and

F.      Allow to Plaintiff such other and further relief as is just and proper under the circumstances.

## COUNT II
### Class-Action Due Process Claim
### For Prospective Relief Only

45. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if set forth verbatim.

46. The Named Plaintiff is a member of a class of current and future inmates confined in the custody of the Sainte Genevieve County Sheriff's Office Detention Center.

47. The total number of persons in the class of current and future inmates confined in the custody of the Sainte Genevieve County Sheriff's Office Detention Center is so numerous that joinder of all members of the class would be impracticable. In addition, it is not possible to identify future inmates who will be confined in the custody of the Sainte Genevieve County Sheriff's Office Detention Center, so joinder of all members of the class would be impossible.

48. There are questions of law and fact that are common to the claim of the class, including the legal question of whether the Fourteenth Amendment requires senders and intended recipients of written materials intended for recipients confined in a jail to receive notice and an opportunity to be heard when the written materials are censored by jail officials and the factual question of what notice and opportunity to be heard, if any, Defendants provide to senders or intended recipients of written materials Defendants censor.

49. The Due Process claim of the Named Plaintiff is typical of the Due Process claim of the class.

50. Plaintiff will fairly and adequately protect the interests of the class.

51. The challenge to the policy, practice, and custom of Defendants to not provide Due Process to senders and intended recipients of written materials that Defendants censor is generally applicable to the class, making appropriate the grant of relief to the class as a whole.

52. Defendants' policies, practices, and customs fail to provide individualized notice to senders and intended recipients of written materials that Defendants censor and fail to give senders and intended recipients an opportunity to be heard on the issue of censorship.

53. The Due Process Clause of the Fourteenth Amendment gives Plaintiff and members of the putative class the right to individualized notice to themselves and the senders of written material when Defendants censor written materials directed to Plaintiff or another member of the putative class.

54. The Due Process Clause of the Fourteenth Amendment gives Plaintiff and members of the putative class the right to a process by which both the sender and the intended recipient of censored mail have an opportunity to challenge the Defendants' censorship.

9

55. The acts described above violate the rights of Plaintiff and other members of the putative class under the Fourteenth Amendment, have harmed them, and, until enjoined, will continue to cause harm.

WHEREFORE, as to Count II, Plaintiff prays this Court:

    A. Upon proper motion, certify a Plaintiff Class, name Plaintiff as class representative, and appoint Plaintiff's attorneys as class counsel;

    B. Upon proper motion, issue a temporary restraining order, preliminary injunction, or both, requiring Defendants, upon making a decision to censor written material, to provide notice and an opportunity to be heard to both the sender and the intended recipient;

    C. Enter declaratory judgment, pursuant to 42 U.S.C. § 1983, that Defendants' policies, practices, and customs violate the Constitution;

    D. Enter a permanent injunction requiring Defendants, upon making a decision to censor written material, to provide notice and an opportunity to be heard to both the sender and the intended recipient;

    E. Award Plaintiff costs, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988 or any other applicable law; and

    F. Allow to Plaintiff such other and further relief as is just and proper under the circumstances.

Respectfully submitted,

/s/ Anthony E. Rothert
ANTHONY E. ROTHERT, #44827MO
GRANT R. DOTY, #60788MO
AMERICAN CIVIL LIBERTIES UNION
    OF EASTERN MISSOURI
454 Whittier Street
St. Louis, Missouri 63108
Telephone: (314) 652-3114
Facsimile: (314) 652-3112


**ATTORNEYS FOR PLAINTIFF**

<u>Certificate of Service</u>

      I certify that a copy of the foregoing was served upon defendants by placing the same in the First Class mail addressed as set forth below on January 18, 2013:

County of Sainte Genevieve, Missouri
c/o Kay Basler, County Clerk
55 South Third Street
Ste. Genevieve, Missouri 63670

Gary J. Stolzer
5 Basler Drive
Ste. Genevieve, Missouri 63670

                                                          /s/ Anthony E. Rothert